**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **10-03259-dd**

# ORDER

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**12/09/2010**



/s/ David R. Duncan

David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 12/09/2010

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-03259-DD |
| Sea Turtle Cinemas, Inc., | Chapter 11 |
| Debtor. | **ORDER** |

This matter is before the Court on Sea Turtle Cinemas, Inc.'s ("Debtor") Motion to Determine Amount of Administrative Rent Obligation ("Rent Motion") and Debtor's Motion to Alter or Amend this Court's Order ("Motion to Alter or Amend") entered September 27, 2010. Debtor filed its Rent Motion on June 3, 2010, and its Motion to Alter or Amend on October 12, 2010. Faison & Associates, LLC, ("Receiver") and Wells Fargo Bank, N.A., et al. ("Noteholder") filed an Objection to Debtor's Rent Motion ("Objection") on June 21, 2010. A hearing was held on these matters on November 22, 2010. The parties were instructed to submit briefs to the Court within ten (10) days, and both parties did so. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 4, 2010. Sea Turtle Entertainment, LLC ("Landlord") is a limited liability company organized and existing in South Carolina. Landlord operates Berkeley Place shopping center in Bluffton, South Carolina and leases space to, among other tenants, Debtor. Debtor is a corporation organized and existing under the laws of South Carolina. Debtor operates a 45,000 square foot, 12-screen movie theater which opened for business on November 16, 2005 and is the anchor of Berkeley Place shopping center. Debtor's sole business pursuit is the operation of

the movie theater; as a result, its primary, essential asset is its lease with Landlord. Landlord and Debtor are owned and managed by the same group of individuals and entities.

Debtor first signed a lease with Landlord on November 15, 2005. This lease ("original lease") provided for rent at the rate of $50,000 per month, plus common area maintenance, taxes, and insurance, and also contained an escalation clause. An amended lease was executed on June 29, 2007, providing for rent at $66,000 per month, plus common area maintenance, taxes, and insurance. This lease also contained an escalation clause. Conflicting evidence was presented at the hearing regarding the amended lease. Ms. Kaylor testified that she was instructed simply to add a page reflecting the higher rent amount to the front of the original lease; however, evidence also indicated that the amended lease's signature page, the last page of the lease, differed from the signature page on the original lease.

In March 2007, Landlord applied for a loan with CIBC World Markets Corporation ("CIBC") to be secured by the shopping center, including the space leased by Debtor. Noteholder is a successor in interest to CIBC. At this time, construction loans secured by different parcels of the shopping center were in default or had matured. Certain parts of the shopping center were in danger of being foreclosed; however, the movie theater occupied by Debtor was not imminently threatened with such a fate. The loan application indicates that the maximum amount of the loan would be $23,500,000, and the commitment letter indicated that multiple contingencies would affect CIBC's approval of the loan. Landlord was represented by independent legal counsel throughout this process. In June 2007, just prior to the scheduled loan closing, Lori Kaylor, principal of both Landlord and Debtor, was notified that for the loan to close, an increase in rent for Debtor's theater was needed. As a result, Ms. Kaylor executed the

amended lease on behalf of both Landlord and Tenant on June 29, 2007. The loan closing with CIBC occurred on the same day.

Ms. Kaylor testified at the hearing that she believed Debtor would not have to pay the additional rent and thought that the amended lease was simply a formality to get the loan closing accomplished. However, evidence presented by Receiver indicated that Debtor actually paid the higher amount of rent provided in the amended lease for over two years after the amended lease was signed. Subsequent to closing and prior to the bankruptcy petition, the CIBC loan, now owned by Noteholder, was declared in default, and an action to foreclose was commenced. Receiver was appointed in the state court action to collect rents. There was also evidence presented at the hearing concerning certain payments of rent by Debtor, including credits against rent arising out of transfers by Debtor to or for the benefit of the members of Debtor. The issue of the amount of rent owed by Debtor to Landlord will be addressed by separate order in connection with a hearing on Debtor's motion to assume the lease.

## **CONCLUSIONS OF LAW**

### I. Debtor's Lease Obligation

Debtor argues that the amended lease executed June 29, 2007 is invalid because it was executed without consideration and under duress. As a result, Debtor claims the monthly rent amount it is required to pay is that stated in the original lease executed November 15, 2005. Separately, Debtor has filed an adversary proceeding seeking a declaration that the amended lease was a fraudulent transfer and should be avoided. Receiver argues that the amended lease controls, because it was executed in exchange for a loan given to Landlord and therefore consideration existed. Receiver adds that Debtor was not under duress when executing the

amended lease because Landlord and Debtor were represented by counsel and because Ms. Kaylor is sophisticated in business matters.

South Carolina law defines consideration broadly as, "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S.C. 161, 167, 101 S.E.2d 486, 489 (1957) (quoting 17 C.J.S. *Contracts* § 70). Consideration is not required to flow directly between the bargaining parties. *Shayne of Miami*, 232 S.C. at 167, 101 S.E.2d at 489 (1957) ("Consideration may be given to the promisor or to some other person. It matters not from whom the consideration moves or to whom it goes. If it is bargained for as the exchange for the promise, the promise is not gratuitous. A benefit to a third person is a sufficient consideration for a promise.") (citations omitted). *See also Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735, 741 (D.S.C. 2001) (quoting Restatement (Second) of Contracts § 71(4)) ("As noted in Section 71(4) of the Restatement, 'the performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.'").

In the present case, consideration existed for the execution of the amended lease. Landlord was informed that unless the amended lease was executed, CIBC would not provide Landlord with the $23.5 million loan that it needed in order to avoid foreclosure on some parcels of the shopping center and continue to operate. This was apparently an underwriting requirement for the loan and provided support for a property appraisal. Debtor incurred a detriment from the execution of the amended lease. In exchange, Landlord incurred benefits both from CIBC and from Debtor. It is immaterial that Debtor did not receive a direct benefit from its execution of the amended lease. Especially in cases where entities are closely related, as in the present case, consideration generally exists for the extension of a loan to one of the parties

because both related entities are actually benefitting from the transaction. The circumstances surrounding the execution of the amended lease show that consideration existed.

The Court also notes that a holding that the original lease is controlling in this case would upset commercial financial markets. Allowing Debtor to disregard the amended lease agreement in favor of the original lease agreement would pave the way for future lessees who discover subsequent to the signing of a lease modification that they are dissatisfied with the terms of the new lease to argue, perhaps successfully, that the modification was for no consideration and therefore is of no effect. Given the circumstances of this case, the Court finds that consideration for the amended lease existed and that the amended lease is effective and controlling.

Debtor also argues that the amended lease is invalid because it was executed under duress. South Carolina law defines duress as "coercion that puts a person in such fear that he is 'bereft' of the quality of mind essential to the making of a contact and the contract was thereby obtained as a result of this state of mind." *Hyman*, 142 F. Supp. 2d at 744 (citing *Phillips v. Baker*, 284 S.C. 134, 325 S.E.2d 533 (1985); *Cherry v. Shelby Mut. Plate Glass & Cas. Co.*, 191 S.C. 177, 4 S.E.2d 123 (1939); *In re Nightingale's Estate*, 182 S.C. 527, 189 S.E. 890, 897 (1937)). In determining whether a contract was executed under duress, the main question is whether, considering all the circumstances of the particular case, a party could not exercise his free will due to the other party's threatening or wrongful behavior. *Gainey v. Gainey*, 382 S.C. 414, 428, 675 S.E.2d 792, 799 (Ct. App. 2009) (citing 17A Am. Jur. 2d *Contracts* § 218 (2004)). The mere fact that a contract is executed in the context of poor market conditions does not indicate that duress occurred, and in situations where a party is sophisticated and represented by counsel, duress rarely exists. *Hyman*, 142 F. Supp. 2d at 745–46.

In Debtor's case, Ms. Kaylor, Debtor's representative, had the benefit of counsel during the course of the amended lease's execution and in connection with the CIBC loan closing. Additionally, Ms. Kaylor is a sophisticated businesswoman engaged in numerous business dealings and has been for several years. Finally, although Ms. Kaylor testified that she believed without the CIBC loan Landlord would not be able to continue operating, she did not testify that she had explored, much less exhausted, other avenues of financing. Even if she had, Landlord still had the choice not to go through with the CIBC loan, and independently of that decision, Debtor had the choice not to execute the amended lease. The mere fact that Landlord was facing an imminent financial crisis does not justify a finding that the amended lease was executed by Debtor under duress.

Debtor's brief cites to South Carolina cases concerning contracts of adhesion. These types of contracts, if found to contain unconscionable terms, are frequently invalidated. Generally, though, these arise with form agreements presented to consumers on a take it or leave it basis. *See Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 644 S.E.2d 663 (2007) (holding trade-in contract between automobile purchaser and dealership was unconscionable and unenforceable because contract was a contract of adhesion, customer lacked meaningful choice in agreeing to contract's arbitration provision, and contract's arbitration clause was oppressive and one-sided); *Southern Atl. Fin. Servs., Inc. v. Middleton*, 349 S.C. 77, 83, 562 S.E.2d 482, 486 (Ct. App. 2002) ("The promissory agreement between Southern Atlantic and [consumer]-like many thousands executed annually in South Carolina-was a contract of adhesion filled with boilerplate language made between a sophisticated lender and an unsophisticated maker."). This doctrine does not have application in the commercial context where borrowers are generally sophisticated and represented by counsel. Additionally, a finding that an agreement was a

contract of adhesion must be coupled with a determination that the borrower has an absence of meaningful choice in connection with the transaction. *See Herron v. Century BMW*, 387 S.C. 525, 693 S.E.2d 394 (2010) (holding that purchaser's contract with car dealer was a contract of adhesion because it was "a contract on a standard form, presented on a take-it-or-leave-it basis," but finding that the contract was not unconscionable because the purchaser had a meaningful choice in signing the contract and the contract did not contain oppressive or one-sided terms). As with Debtor's argument concerning duress, this finding is not supported in the record.

**II. Debtor's Motion to Alter or Amend the Court's September 27, 2010 Order**

In its September 27, 2010 Order, this Court ordered Debtor to pay the stub rent owed, as set forth in the amended lease, within fifteen (15) days from the date of entry of the Order. Debtor was apparently unable to make this payment as ordered, and so filed its Motion to Alter or Amend on October 12, 2010 to request an extension of time until December 31, 2010. On November 30, 2010, the parties entered into a consent order extending the time for Debtor to pay the stub rent owed until December 31, 2010. As a result, Debtor's Motion to Alter or Amend is moot and does not require the Court's consideration.

### CONCLUSION

For the reasons stated above, the Court finds that the amended lease executed by Debtor on June 29, 2007 is effective and controlling. As a result, rent should be paid at the amount set forth in the amended lease, and any accrued and owing rent under that lease should be paid. Due to the parties' November 30, 2010 consent order, Debtor's Motion to Alter or Amend is moot.

AND IT IS SO ORDERED.